THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARIA CHRISTINA ALBA<br>Defendant. | **MEMORANDUM DECISION AND ORDER ON MOTION TO SUPPRESS**<br>Case No. 2:25-cr-00368-RJS-CMR<br>District Judge Robert J. Shelby<br>Chief Magistrate Judge Cecilia M. Romero |

Defendant Maria Christina Alba is charged with (1) possession of methamphetamine with intent to distribute, and (2) possession of heroin with intent to distribute.[1] The charges arise from a traffic stop on Interstate-15 in Juab County, Utah. On September 16, 2025, Utah Department of Natural Resources (DNR) Ranger Daniel McCann recorded Alba driving a vehicle at 115 miles per hour and initiated a traffic stop. While Ranger McCann worked on the citation, Utah Highway Patrol Trooper Marshall Roundy arrived and conducted a "K-9 sniff" of the vehicle. After the K-9 gave a positive indication, the officers searched the vehicle and found methamphetamine and heroin. Before the court is Alba's Motion to Suppress all evidence obtained during the allegedly unconstitutionally prolonged stop.[2] The United States opposes the Motion.[3] The court held an evidentiary hearing on the Motion on May 18, 2026,[4] and received

[1] Dkt. 1, *Indictment*.

[2] Dkt. 37, *Motion to Suppress*; *see also* Dkt 46, *Memorandum in Support of Defendant's Motion to Suppress* (*Motion*); Dkt. 49, *Defendant's Response to United States' Opposition to Defendant's Motion to Suppress* (*Reply*).

[3] Dkt. 47, *United States' Opposition to Defendant's Motion to Suppress* (*Opposition*).

[4] Dkt. 42, *Minute Entry* (*Evidentiary Minute Entry*).

oral argument on the Motion on July 29, 2026.[5] For the reasons explained below, the Motion is DENIED.

## FINDINGS OF FACT[6]

On September 16, 2026, Ranger McCann was driving northbound on Interstate-15 near Yuba State Park in Juab County, Utah.[7] He was driving his marked-DNR patrol truck with light bars on top.[8] Ranger McCann was travelling approximately 80 miles per hour in the right lane when a grey sedan in the left lane "flew" passed him before changing into his lane to pass another vehicle on the right.[9] Using his radar unit, Ranger McCann recorded the sedan's speed as 115 miles per hour.[10] The posted speed limit was 80 miles per hour.[11] Ranger McCann activated his emergency lights and siren to initiate a traffic stop.[12] The sedan pulled over without delay or incident.[13]

---

[5] Dkt. 50, *Minute Entry* (*Oral Argument Minute Entry*).

[6] The following facts are drawn from the testimony evidence admitted during the evidentiary hearing on May 18, 2026. *Evidentiary Minute Entry*. The evidence includes footage from Ranger McCann's body camera and patrol truck dash camera, testimony from Ranger McCann and Trooper Roundy, and photographs of Ranger McCann's patrol truck. Dkt. 43, *Motion Hearing Transcript* (*Tr.*) at 11:01–12:05, 36:18–37:01 (admitting Gov. Exhibit 1 and Alba Exhibit 8 (*McCann Dash Cam*) (Ranger McCann dash camera footage)); *id.* at 17:07–21, 95:13–19 (admitting Gov. Exhibit 2 and Alba Exhibit 9 (*McCann Body Cam*) (Ranger McCann body camera footage)); *id.* at 06:14–76:19 (McCann testimony); *id.* at 77:07–95:09 (Roundy testimony); *id.* at 26:19–24 (admitting Alba Exhibits 1, 2, 3, 4 (photographs of Ranger McCann's patrol truck)). Ranger McCann and Trooper Roundy both testified during the hearing, and the court finds both of their testimony credible. *See id.* The court does not consider any evidence that was not admitted during the evidentiary hearing.

[7] *Tr.* at 7:06–22.

[8] *Id.* 8:09–12; *see also Alba Exhibits* 1, 2, 3, 4 (photos of patrol truck).

[9] *Tr.* at 8:04–07, 12:13–15.

[10] *Id.* at 8:13–16. Ranger McCann tested the radar that morning using tuning forks to ensure it was working properly. *Id.* at 8:18–9:05.

[11] *Id.* 8:02–03.

[12] *Id.* at 9:06–09. DNR Rangers are authorized to conduct traffic stops. *Id.* 6:22–07:05.

[13] *Id.* at 31:04–20.

Ranger McCann approached the vehicle at approximately 8:15 AM.[14] When he arrived at the driver's door, Ranger McCann said, "Hello, what's the rush?"[15] Alba responded, "I'm falling asleep."[16] Ranger McCann stated, "You're falling asleep?"[17] Alba provided an explanation, and Ranger McCann responded, "At 115?"[18] Alba replied.[19] Ranger McCann then states, "And passing people on the right? That seems pretty alert to me. You can't pass people on the right. This right lane you can't pass people on the right. Passing is on the left only. Do you have a driver's license? You should know that then."[20] Ranger McCann's response—which Alba calls the "roadside lecture" about Utah law[21]—lasted 21 seconds.[22]

Alba began to search for her driver's license.[23] Ranger McCann saw a vape and asked her what was in it.[24] She stopped searching and responded saying it was tobacco.[25] At Ranger McCann's request, Alba handed him the vape.[26] Ranger McCann looked it over, again asked what was in it, and returned it to Alba.[27] About 15 seconds elapsed between Ranger McCann first seeing the vape and returning it to Alba.[28]

---

[14] *Id.* at 14:02.

[15] *McCann Body Cam* at 00:24–00:47.

[16] *Id.* at 00:28–00:32.

[17] *Id.*

[18] *Id.*

[19] *Id.* The noise of traffic passing makes Alba's response inaudible in the recording.

[20] *Id.* at 00:46–1:07.

[21] *Motion* at 9.

[22] *McCann Body Cam* at 00:46–01:07.

[23] *Id.* at 01:07–1:13.

[24] *Id.*

[25] *Id.* 01:15–1:18.

[26] *Id.* at 01:15–01:22.

[27] *Id.*

[28] *Id.* at 01:07–01:22.

Ranger McCann again asked for her driver's license, and Alba searched for about 30 seconds before providing a California identification.[29] In response to Ranger McCann's questions, Alba explained the vehicle was a rental; she was driving to Salt Lake City, Utah to visit her grandmother; and the Fresno, California address on her identification was current.[30] Ranger McCann testified that at this point he suspected Alba was impaired or drug trafficking.[31]

At approximately 8:17 AM, Ranger McCan walked back to his patrol truck.[32] While walking, he asked dispatch for a K-9 unit.[33] As he was getting into the truck and opening his laptop, dispatch informed him a K-9 unit was headed his way.[34] He responded, "10-4, I'm code 4, but if you got a K-9 while I'm doing this, that'd be great."[35] This second request for a K-9 took five seconds.[36] Code 4 commonly means the situation is under control and no further assistance is needed.[37]

Ranger McCann began processing the stop as a reckless driving investigation by logging into his laptop and looking up the vehicle's license plate and Alba's driver's license.[38] A reckless driving investigation takes "significantly longer" than a speeding ticket infraction

[29] *Id.* at 01:24–01:52; *Tr.* at 15:13–14.

[30] *McCann Body Cam* at 02:29–02:53.

[31] *Tr.* at 14:22–15:08 (testifying on direct examination that after the first conversation with Alba he thought "maybe there is some impairment"); *id.* at 52:22–53:11 (testifying on cross-examination that he was suspicious at this point of Alba "driving impaired," if she was "using anything," and if she was "drug trafficking" as he is "suspicious of that with every vehicle" he stops).

[32] *McCann Body Cam* at 02:59–03:14.

[33] *Id.* at 03:02–03:07.

[34] *Id.* at 03:25–03:29.

[35] *Id.* at 03:30–03:35.

[36] *Id.*

[37] *Opposition* at 3 n.1.

[38] *Tr.* at 19:08–19:12.

because it is an arrestable offense that could involve impounding the vehicle.[39] His computer required him to reboot the system, which took an extra minute to process the information.[40] He also asked dispatch to check Alba's driver's license record.[41]

At approximately 8:21 AM, Trooper Roundy arrived and walked up to Ranger McCann's windshield.[42] Ranger McCann greeted him and asked if he had a K-9, which Trooper Roundy confirmed.[43] Ranger McCann then briefly summarized the encounter thus far, explaining Alba's answers were suspicious, she's from California, the rental vehicle has a Florida license plate, she said she's going to Salt Lake City to visit her grandmother, he recorded her speed at 115 miles per hour, and he is writing a citation for "reckless."[44] The exchange with Trooper Roundy lasted 23 seconds.[45] Trooper Roundy began running his K-9, Louie, around Alba's vehicle at approximately 8:23 AM.[46]

At the evidentiary hearing, Trooper Roundy explained a K-9 sniff. A sniff involves the K-9 moving around the exterior of the vehicle and smelling to detect a specific trained-for odor.[47] When the K-9's attention is alerted to the specific odor, the dog displays "alert behavior," which includes deep breathing through the nose, narrowing its search area to a specific spot (called "bracketing"), and jumping up on its hind legs to move closer to a source.[48]

---

[39] *Id.* at 21:16–22:22.

[40] *Id.* at 20:10–20:22.

[41] *Id.* at 19:23–20:02; *see also McCann Body Cam* at 03:57–07:15.

[42] *McCann Body Cam* at 07:31–07:35.

[43] *Id.*

[44] *Id.* at 07:31–07:54.

[45] *Id.*

[46] *Tr.* at 24:04–05; *McCann Body Cam* at 08:53 (indicating time as 08:23:38).

[47] *Tr.* at 80:03–83:10.

[48] *Id.*

Once the K-9 identifies the odor it is trained to detect, it does a "final trained indication."[49] Ranger McCann's K-9 Louie is trained to sniff for drugs, and his final trained indication is to sit down.[50] As Trooper Roundy walked Louie around Alba's vehicle, Louie alerted multiple times before sitting down.[51] Trooper Roundy then communicated the positive indication to Ranger McCann.[52]

Also at 8:23 AM, while Louie was walking around the vehicle, Utah Highway Patrol Sergeant Blankenagle arrived at the scene and approached Ranger McCann's truck.[53] Ranger McCann took about 40 seconds to explain the circumstances of the stop to Sergeant Blankenagle.[54] The conversation was interrupted by Trooper Roundy informing them of the positive indication.[55]

When he learned of the positive indication, Ranger McCann was still processing the reckless driving investigation.[56] Had Trooper Roundy and Louie not been present, Ranger McCann would still have been working on the reckless investigation past the time when the K-9 alerted.[57] The K-9 sniff did not extend the duration of the stop.[58] Following the positive indication, the officers searched Alba's vehicle and discovered methamphetamine and heroin.[59]

---

[49] *Id.* at 83:13–84:09.

[50] *Id.* at 82:21–23; 85:03–86:25.

[51] *Id.* 85:03–86:25 (testimony explaining Louie's behavior as recorded by McCann's dash cam); *see also McCann Dash Cam* at 10:57–11:46.

[52] *Tr.* 88:24–89:06.

[53] *McCann Body Cam* at 08:57 (indicating time as 08:23:42).

[54] *Id.* at 09:02–09:45 (explaining he recorded her at 115 mile per hour before initiating the stop and summarizing his conversation with Alba).

[55] *Id.*; *see also* Tr. 24:19–20.

[56] Tr. 24:17–23.

[57] *Id.*

[58] *Id.*

[59] *Id.* 89:07–13.

## LEGAL STANDARDS

The Fourth Amendment of the U.S. Constitution protects the public from "unreasonable searches and seizures."[60] The "ultimate touchstone of the Fourth Amendment is 'reasonableness.'"[61] As the proponent of the motion to suppress, Alba bears "the burden of proving whether and when the Fourth Amendment was implicated," while the government "bears the burden of proving that its warrantless [search was] justified."[62] The court must "assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion."[63]

"A routine traffic stop is a seizure and is treated as an investigative detention under the Fourth Amendment."[64] "Authority for the seizure [] ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."[65] In *Rodriguez v. United States*,[66] the Supreme Court explained that an officer's mission during a traffic stop is "determining whether to issue a traffic ticket" and conducting "ordinary inquiries incident to the traffic stop."[67] The Tenth Circuit interprets *Rodriguez* to mean "an unlawful seizure occurs when an officer (1) diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct,

---

[60] U.S. Const. amend IV.

[61] *United States v. Metts*, 748 F. App'x 785, 788 (10th Cir. 2018) (unpublished) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

[62] *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020) (first quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017); then quoting *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994)).

[63] *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020).

[64] *United States v. Leon*, 80 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted).

[65] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citation omitted).

[66] 575 U.S. 348 (2015).

[67] *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (citation modified).

(2) in a way that prolongs (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion."[68]

The traffic-based mission of the stop extends to "officer actions that are reasonably related in scope to the mission of the stop."[69] This includes activities closely related to traffic enforcement, roadway safety, and officer safety,[70] such as verifying a driver's license and registration, checking for warrants, issuing citations, or confirming a vehicle's rental agreement.[71] But investigating other crimes, including conducting a K-9 sniff, deviates from the traffic-based mission.[72]

*Rodriguez* also requires the detour prolong—that is, add time to—the traffic stop.[73] This is a fact-intensive question.[74] The detour may not extend beyond "the time needed to handle the matter for which the stop was made."[75] But "the Fourth Amendment does not require officers to use the least intrusive or most efficient means conceivable to effectuate a traffic stop."[76] Instead,

---

[68] *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) (citation modified).

[69] *United States v. Ramdial*, No. 24-6213, 2025 WL 2682624, at *3 (10th Cir. Sept. 19, 2025) (unpublished) (quoting *United States v. Cortez*, 965 F.3d 827, 833 (10th Cir. 2020)).

[70] *See United States v. Dawson*, 90 F.4th 1286, 1291 (10th Cir. 2024) (traffic enforcement and roadway safety); *United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020) (officer safety).

[71] *Mayville*, 955 F.3d at 830; *Dawson*, 90 F.4th at 1292; *Cortez*, 965 F.3d at 838.

[72] *See Rodriguez*, 575 U.S. at 355, 355–56 (stating a K-9 sniff is "not an ordinary incident of a traffic stop" but is "a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000)) (other citations omitted)); *Cortez*, 965 F.3d at 838 ("What law enforcement may not do [during a traffic stop] is divert from the mission of the stop in order to conduct general criminal interdiction or investigate other crimes.").

[73] *Rodriguez*, 575 U.S. at 357.

[74] *See United States v. Malone*, 10 F.4th 1120, 1124 (10th Cir. 2021).

[75] *Rodriguez*, 575 U.S. at 350; *see also Mayville*, 955 F.3d at 832 (citation omitted) (explaining even if running the record check through dispatch extended the duration of the stop, any prolongation "did not unreasonably prolong the stop").

[76] *Mayville*, 955 F.3d at 832.

the court must consider whether the officer was diligent in pursuing routine traffic tasks incident to the stop.[77] Duration may be evidence of diligence or lack thereof.[78]

If the court finds a detour that prolongs the stop, this is the "*Rodriguez* moment."[79] At that moment, reasonable suspicion becomes necessary.[80] "Even *de minimus* delays caused by unrelated inquiries violate the Fourth Amendment in the absence of reasonable suspicion."[81]

**ANALYSIS**

Alba does not challenge the initial traffic stop but argues the stop became unconstitutional when Ranger McCann impermissibly prolonged it.[82] The parties agree the mission of the stop was to investigate reckless driving.[83] Alba argues Ranger McCann took five impermissible detours from this mission that prolonged the stop: (1) his "roadside lecture on Utah law," (2) his investigation of Alba's vape device, (3) his second request for a K-9, (4) his window-side discussion with Trooper Roundy, and (5) his window-side discussion with Sergeant Blankenagle.[84] The court disagrees and concludes no *Rodriguez* moment occurred.

---

[77] *United States v. Cates*, 73 F.4th 795, 808 (10th Cir. 2023); *see also Rodriguez*, 575 U.S. at 357 ("If an officer can complete traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission," and "a traffic stop prolonged beyond that point is unlawful." (citation modified)).

[78] *See Cates*, 73 F.4th at 807–08 (distinguishing a 10 second detour to text an arriving K-9 office from a 3 minute detour to contact and arrange a K-9 sniff); *Mayville*, 955 F.3d at 832 & n.2 (explaining the duration of the stop was reasonable because the officer's acted diligently during the twelve minutes between the time he returned to his patrol car after speaking with the driver and the K-9's alert).

[79] *Leon*, 80 F.4th at 1165 (citation omitted).

[80] *Id.*

[81] *Frazier*, 30 F.4th at 1173.

[82] *See Motion*.

[83] *See Opposition* at 10; *Reply* at 1.

[84] *Motion* at 9–14.

### I. No *Rodriguez* Moment Occurred Because the Length of Stop Was Not Extended and Ranger McCann Diligently Pursued the Reckless Driving Mission.

For a *Rodriguez* moment to occur, any detour must prolong—that is, add time to—the stop.[85] The record shows that no detour satisfies this requirement because no detour extended the length of the stop and Ranger McCann acted diligently in pursuing the traffic-based mission of the stop. The court begins by summarizing three Tenth Circuit cases that are relevant to its analysis: *United States v. Frazier*,[86] *United States v. Cates*,[87] and *United States v. Ramdial*.[88]

In *Frazier*, the Tenth Circuit held a stop was prolonged when the officer spent three minutes arranging a K-9 sniff before beginning to process the citation.[89] There, the officer conducted a traffic stop for speeding and failing to signal for two seconds before changing lanes.[90] After an initial conversation with the driver, the officer returned to his patrol car, and before processing a citation, he took about three minutes to contact a K-9 officer first through instant messaging, then calling, and then requesting dispatch to locate the handler.[91] The Tenth Circuit held "the trooper's efforts to arrange for a dog sniff diverted from the traffic-based mission of the stop" because "each minute that the trooper spent arranging the dog sniff was time the citation-related tasks went unaddressed."[92]

In *Cates*, the Tenth Circuit held a stop was not prolonged when the officer briefly messaged the arriving K-9 officer to begin running the dog before continuing the remaining

---

[85] *Rodriguez*, 575 U.S. at 357.

[86] 30 F.4th 1165 (10th Cir. 2022).

[87] 73 F.4th 795 (10th Cir. 2023).

[88] No. 24-6213, 2025 WL 2682624 (10th Cir. Sept. 19, 2025) (unpublished).

[89] *Frazier*, 30 F.4th at 1173.

[90] *Id.* at 1170.

[91] *Id.* at 1171.

[92] *Id.* at 1173.

traffic tasks such as checking the defendant's driver's license.[93] There, the officer stopped the vehicle for speeding, learned the vehicle was a rental, and requested the rental agreement.[94] When the driver said he needed to locate the agreement on his phone, the officer asked the driver to join him in the patrol car.[95] As he walked to the patrol car, the officer requested a K-9 unit.[96] When the K-9 officer arrived, the officer texted the K-9 officer to run the dog around the stopped vehicle.[97] The officer then ran the driver's license and conversed with the driver about his travel plans.[98] The driver eventually found a general email indicating he had a car reserved through a rental company, but by that time, the K-9 had alerted.[99] The Circuit found the text to the K-9 officer did not prolong the stop, explaining:

> the mission of the traffic stop was still ongoing when [the officer] requested support from [the K-9 officer], and it remained uncompleted when the drug-detection dog alerted several minutes later. . . . Because the dog sniff and alert were contemporaneous with the troopers' reasonably diligent pursuit of the stop's mission, the subsequent search of the defendant's vehicle and discovery of evidence did not violate his Fourth Amendment rights. Although we can imagine other situations in which an officer's decision to arrange for an open-air dog sniff would unreasonably prolong a traffic stop, this case is not one of them. All in all, it took approximately three minutes from the start of the traffic stop until [the K-9 officer] arrived onsite with [his K-9]. And, critically, during this time, [Officer 1] continued executing the tasks incident to a traffic stop, such as running [the defendant's] license and checking for any outstanding warrants. We conclude [Officer 1] was diligent in executing tasks incident to a traffic stop, and his actions did not unlawfully extend the duration of the stop.[100]

---

[93] *Cates*, 73 F.4th at 806–07.

[94] *Id.* at 799–800.

[95] *Id.*

[96] *Id.* at 800.

[97] *Id.* at 800, 805–06.

[98] *Id.* at 806.

[99] *Id.*

[100] *Id.* at 807.

The *Cates* court distinguished the case from *Frazier*, explaining the officer's "decision to send [the K-9 officer] a single text as he got in the patrol car is not analogous to the trooper's decision in *Frazier* to spend three full minutes attempting to contact a canine handler through a variety of different means."[101] The court clarified, a ten-second delay is not "necessarily too brief to trigger a *Rodriguez* moment," since here the officer "did not delay the stop at all because he requested the canine search while waiting on Cates to find the rental agreement."[102]

In its unpublished *Ramdial* decision, the Tenth Circuit held a stop was not prolonged by parallel criminal investigation that occurred while the officer was waiting for a response from dispatch.[103] There, the officer initiated the traffic stop after witnessing Ramdial simultaneously turn on his turn signal and change lanes.[104] After a brief discussion with the driver about his travel plans, the officer returned to his patrol car and called dispatch to check if the driver had a valid license, any outstanding warrants, or a criminal history.[105] While awaiting a response from dispatch, the officer investigated the driver's travel plan story, which indicated the driver had been dishonest.[106] Dispatch then reported back the requested information.[107] The officer requested a K-9 before going to speak to Ramdial further about his travel plans.[108] When the dog arrived, it alerted, and the officers searched the vehicle and found cocaine inside.[109] The Circuit concluded the stop was not extended by the parallel general investigation, because

---

[101] *Id.* at 807–08.

[102] *Id.* at 808 n.5.

[103] *Ramdial*, 2025 WL 2682624, at *3–4.

[104] *Id.* at *1.

[105] *Id.*

[106] *Id.* at *1–2.

[107] *Id.* at *2.

[108] *Id.*

[109] *Id.*

investigating the travel plan story occurred while the officer was "waiting for a response from dispatch" and there was "no indication" that any outstanding tasks related to the traffic stop remained.[110]

Here, Ranger McCann was reasonably diligent in pursuing the reckless driving mission throughout the entire stop until the moment he learned Louie indicated. After observing Alba driving 35 miles per hour over the speed limit, he initiated a traffic stop for reckless driving. He approached the vehicle, explained the reason for the stop, and obtained her license and insurance information before returning to his patrol vehicle to process the violation for reckless driving. He ran her information through his computer and asked dispatch to do an independent query on her information. At one point, he was required to reboot his computer, which excusably delayed the processing by about a minute. As the new officers arrived, Ranger McCann took almost no time to exchange pleasantries and instead immediately summarized the circumstances of the stop.[111] The record shows Ranger McCann diligently processed the citation from the beginning of the traffic stop until Trooper Roundy informed him Louie indicated.

Ranger McCann may contemporaneously engage in tasks unrelated to the traffic-based mission so long as he diligently pursues the stop's mission, such that the other tasks do not prolong the stop.[112] That is the case here. Each of the claimed detours occurred while Ranger McCann pursued the reckless driving investigation and processing: while asking Alba for her identification, he sees the vape, asks questions about it, and inspects it. While logging into his computer and speaking to dispatch, Ranger McCann makes the second request for a K-9 unit.

---

[110] *Id.* at *3.

[111] *McCann Body Cam* at 07:31–07:54 (taking four seconds to exchange pleasantries with Trooper Roundy before summarizing the stop); *id.* at 08:57–09:45 (taking five seconds to greet Sergeant Blankenagle before explaining the circumstances of the stop).

[112] *See Mayville*, 955 F.3d at 833.

Specifically, Ranger McCann asked for a K-9 to come "while I'm doing this," referring to writing up the citation, looking up Alba's driver's license and license plate information, and getting the citation form ready.[113] And while processing Alba's information, he briefly summarizes the encounter with Alba to Trooper Roundy and Sergeant Blankenagle as they arrive.[114]

Ranger McCann's diligence is further underscored by the brevity of each alleged detour: the "roadside lecture" lasted 21 seconds, the vape inspection lasted 15 seconds, the second request for a K-9 took 5 seconds, the conversation with Trooper Roundy took approximately 23 seconds, and the conversation with Seargeant Blankenagle took approximately 40 seconds. The length of each detour does not render it constitutional, since even *de minimus* delays violate *Rodriguez*.[115] But the duration is evidence of Ranger McCann's diligence in processing the traffic stop. The evidence shows these detours did not delay or interrupt the pursuit of that mission. A reckless driving investigation is more intensive than a speeding citation, and had the K-9 not been present, Ranger McCann would still have been working on the reckless investigation when Louie indicated.[116] Based on this record, the court concludes no detour prolonged the stop under *Cates*.

During oral argument, Alba tried to distinguish *Cates* on the ground that the officer there was waiting for a rental agreement.[117] She argued when the officer is waiting for something—

---

[113] *Tr.* at 74:22–75:05.

[114] *McCann Body Cam* at 7:31–7:54 (speaking to Trooper Roundy); *id.* at 8:55–9:46 (speaking to Sergeant Blankenagle).

[115] *See Mayville*, 955 F.3d at 830.

[116] *Tr.* at 21:16–22:19 (explaining why a reckless investigation stop takes "significantly longer" than a stop for speed); *id.* at 24:17–24:23 (testifying "[h]ad the K-9 not been present," he still would "have been working on the reckless investigation" when Trooper Roundy told him that the dog indicated).

[117] *See Oral Argument Minute Entry*; *see also Reply* at 13–15 (addressing *Ramdial*).

such as for a rental agreement like in *Cates* or a response from dispatch like in *Ramdial*—the officer may engage in general investigation without prolonging the stop.[118] But, she argued, that is not the case here where Ranger McCann was not waiting for anything. The court disagrees with her interpretation of *Cates*. There, the officer was waiting for the driver to produce the rental agreement when he messaged the K-9 officer.[119] But waiting was not determinative because outstanding traffic-related tasks remained, like running the driver's license.[120] The Tenth Circuit held it was permissible for the officer to send the message to arrange for the K-9 sniff before resuming the traffic-related tasks.[121] This distinguishes *Cates* from *Ramdial*, where there was no indication of remaining traffic-related tasks and the officer was just waiting for a response from dispatch.[122] Instead, the determinative factor in *Cates* was whether "the mission of the traffic stop was still ongoing when [the officer] requested support from [the K-9 officer]" and whether the general investigation was "contemporaneous with the troopers' reasonably diligent pursuit of the stop's mission."[123] Under this standard, the court concludes Ranger McCann, like the officer in *Cates*, "was diligent in executing tasks incident to a traffic stop, and his actions did not unlawfully extend the duration of the stop."[124] Accordingly, the court concludes no *Rodriguez* moment occurred.

---

[118] *Oral Argument Minute Entry*.

[119] *Cates*, 73 F.4th at 806–08 & n.5.

[120] *Id.*

[121] *Id.* at 807.

[122] *Ramdial*, 2025 WL 2682624, at *3–4.

[123] *Cates*, 73 F.4th at 807.

[124] *Id.*

## II. The Alleged Detours Are Not *Rodriguez Moments.*

Even if Ranger McCann was not reasonably diligent, Alba fails to identify any detour that amounts to a *Rodriguez* moment requiring independent reasonable suspicion. The court proceeds by addressing each of the alleged detours in turn.

### *A. Roadside Lecture*

Alba argues Ranger McCann deviated from the traffic-based mission of the stop by lecturing Alba about not passing in the right-hand lane.[125] The court disagrees.

The roadside lecture was closely related to the traffic-based mission. The stop's mission was to investigate reckless driving. Incident to that mission is traffic enforcement and roadway safety,[126] which certainly entails explaining the circumstances of the individual's driving that made it dangerous. Here, Alba was driving 115 mph—35 mph over the 80 mph speed limit. She "flew" by Ranger McCann in the left-hand lane before changing lanes to pass another vehicle on its right-hand side. During the stop, Ranger McCann told Alba that she cannot pass on the right-hand side and passing is for the left-hand lane only. Utah traffic law generally prohibits passing on the right, unless an exception applies.[127] Alba argues this roadside lecture was a detour because an exception to the general prohibition applied here and Ranger McCann's interpretation otherwise was objectively unreasonable.[128] But an officer explaining the dangerous circumstances of the stop to the driver after pulling them over for reckless driving must be

---

[125] *Motion* at 9–11.

[126] *See Dawson*, 90 F.4th at 1291.

[127] Utah Code Ann. § 41-6a-705 (permitting passing another vehicle on the right "when the vehicle overtaken is making or preparing to make a left turn" or "on a roadway with unstructured pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle"). Ranger McCann admitted on cross-examination that this exception applies to Alba here. *Tr.* 41:10–41:21.

[128] *Motion* at 9–11.

incident to the traffic-purpose of the stop. As Ranger McCann testified, passing on the right is dangerous because "typically people move over to the right, and if somebody is coming up really fast on them, they may not see that and it could cause a collision."[129] Thus, the court concludes the roadside lecture was not a detour.

*B. Vape Investigation*

Alba argues investigating the vape deviated from the traffic-based mission of the stop under the Tenth Circuit's decision in *United States v. Batara-Molina*.[130] The court disagrees.

In *Batarama-Molina*, the Tenth Circuit conducted a reasonable suspicion analysis, which requires determining whether the officers had "reasonable suspicion that they were confronting ongoing criminal drug activity."[131] The court held a vape device is a common item that is not evidence of ongoing criminal drug activity.[132] But that reasonable suspicion holding is inapplicable to the detour analysis. Under *Rodriguez*, the court must first determine whether there was a detour at all before reaching reasonable suspicion.[133] Whether a vape is evidence of criminal drug activity is an entirely different question than the question before the court in this case: whether asking about a vape that the officer sees and was accessible to the driver is an activity closely related to traffic enforcement and roadway safety under circumstances implicating potential impairment.[134]

---

[129] *Tr.* at 74:13–20.

[130] *Motion* at 11–12 (citing 60 F.4th 1251 (10th Cir. 2023)).

[131] *Batara-Molina*, 60 F.4th at 1256–59.

[132] *Id.* (holding a vape device has no weight in the reasonable suspicion analysis when there is "no evidence that this vape pen was being used for any illegal activity").

[133] *See Frazier*, 30 F.4th at 1173 (summarizing *Rodriguez*, 575 U.S. at 354–55).

[134] *See Dawson*, 90 F.4th at 1290–91 (holding the traffic-based mission of a stop includes activities closely related to traffic enforcement and roadway safety).

Here, Ranger McCann was investigating reckless driving after recording Alba going 35 miles over the speed limit. When he asked for Alba's license and she began searching for it, Ranger McCann saw the vape, inquired about it, inspected it, and returned it to Alba. The vape was accessible to Alba while driving, and Ranger McCann may ask about it. While the vape is not evidence of criminal wrongdoing, it may cast light on Alba's reckless driving. [135] Ranger McCann did not detour from the traffic-based mission by asking about the vape device when he saw it. Accordingly, the court concludes this is not a *Rodriguez* moment.

*C. Second Canine Request*

Alba next argues Ranger McCann's second request for the K-9 when he was back in his patrol truck was a *Rodriguez* moment.[136] The court disagrees. In *Cates*, the Circuit held the officer did not prolong the traffic stop by taking about ten seconds to message the arriving K-9 officer to run the dog around the stopped vehicle before returning to traffic-based activities like running the driver's license.[137] Here, Ranger McCann took five seconds to request the K-9 unit before returning to traffic-based activities like running the driver's license.[138] These facts are analogous such that *Cates* must control here. Because the Circuit held there was not a *Rodriguez* moment in *Cates*, the court concludes the second canine request was also not a *Rodriguez* moment.

---

[135] *See Cortez*, 965 F.3d at 839 (permitting offers to ask question that "cast light" on why the driver committed a traffic violation, because such questions are tied to the initial justification for the stop).

[136] *Motion* at 12.

[137] *Cates*, 73 F.4th at 805–06.

[138] *McCann Body Cam* at 03:30–03:35.

*D. Conversations with Trooper Roundy and Seargeant Blankenagle*

Finally, Alba argues the conversations with Trooper Roundy and Sergeant Blankenagle both constitute *Rodriguez* moments.[139] The court disagrees.

The traffic-based mission of the stop includes activities related to traffic enforcement, roadway safety, and officer safety.[140] Briefly providing basic information about the scene and stop to an arriving back-up officer is incident to the traffic-based mission. The touchstone of the Fourth Amendment is reasonableness,[141] and it would be unreasonable to interpret *Rodriguez* and its progeny to require an officer to not interact with arriving officers at all. This is especially the case since the Tenth Circuit permits officers to take "negligibly burdensome precaution[s]" that are consistent with the important governmental interest in officer safety.[142] Alba does not cite, and the court is not aware of, any cases which adopt such a demanding standard for officers.

Alba has a stronger argument for the conversation with Trooper Roundy because he was a K-9 officer whose whole purpose of being there was the K-9 sniff. But this argument still fails under *Cates*, where the Circuit permitted an officer to briefly coordinate with an arriving K-9 officer so long as the initial officer otherwise acted diligently in processing the traffic stop. The court has already concluded Ranger McCann acted reasonably here.[143] The conversation with Trooper Roundy is analogous to the message the officer sent in *Cates*: in both cases, the officers

[139] *Motion* at 12–14.

[140] *See Dawson*, 90 F.4th at 1291; *Mayville*, 955 F.3d at 830.

[141] *See Stuart*, 547 U.S. at 403.

[142] *Mayville*, 955 F.3d at 830.

[143] *See supra* Section I.

briefly coordinated with the arriving K-9 officer, otherwise acted reasonably diligent, and then resumed outstanding traffic-related tasks like running the driver's license. *Rodriguez* does not require Ranger McCann to complete the reckless citation as fast as humanly possible.[144] Instead, *Rodriguez* requires reasonableness.[145] Here, as in *Cates*, the mission of the traffic stop was ongoing when Ranger McCann spoke to both arriving officers, and it remained incomplete when Ranger McCann learned Louie had a positive indication.[146] Ranger McCann took 13 seconds longer than the officer in *Cates* to coordinate with the arriving officer.[147] But these times are substantially similar, especially compared to the three minute delay the Circuit found unconstitutional in *Frazier*.[148] And further, the determinative question is whether the officer acted reasonably, not the precise length of time the stop took.[149] There are undoubtedly circumstances where greeting and coordinating with arriving officers unreasonably prolong a traffic stop—for example, if the officers exchange lengthy pleasantries or discuss information irrelevant to this stop. But the record does not show such facts here. Ranger McCann quickly greeted both officers before immediately and briefly summarizing the encounter thus far. The conversations occurred in the middle of processing Alba's information, which would not have otherwise been completed had the conversations not occurred. From this record, the court concludes neither conversation was a *Rodriguez* moment.

---

[144] *See Mayville*, 955 F.3d at 834 (stating officers need not use the "most efficient means conceivable to effectuate a traffic stop").

[145] *See id.* at 827 (holding "reasonableness—rather than efficiency—is the touchstone of the Fourth Amendment").

[146] *See Cates*, 73 F.4th at 805–06.

[147] *Id.* (finding officer took 10 seconds to send message); *McCann Body Cam* at 07:31–07:54 (conversation with Trooper Roundy took 23 seconds).

[148] *Cates*, 73 F.4th at 807–08 (explaining officer's "decision to send [the K-9 officer] a single text message as he got in the patrol car is not analogous to the trooper's decision in *Frazier* to spend three full minutes attempting to contact a canine handler throughout a variety of means" (citing *Frazier*, 30 F.4th at 1137)).

[149] *See id.* at 808 n.5 (explaining the fact that the message took only 10 seconds was not determinative for whether the stop was prolonged).

Accordingly, because no *Rodriguez* moment occurred, the court concludes the traffic stop was not unconstitutionally prolonged.[150]

## CONCLUSION

For the foregoing reasons, the Motion to Suppress is DENIED.[151]

SO ORDERED this 21st day of August, 2026.

BY THE COURT



JUDGE ROBERT J. SHELBY
United States District Court

[150] Reasonable suspicion becomes necessary only after a *Rodriguez* moment occurs. *See Leon*, 80 F.4th at 1165. Because there was no *Rodriguez* moment, the court does not consider whether reasonable suspicion existed for Ranger McCann to investigate drug trafficking. *See Mayville*, 955 F.3d at 833 n.3.

[151] Dkt. 37.